A04A2120. WALDEN v. SHELTON.
(606 SE2d 299)

ELDRIDGE, Judge.

William Shelton, Jr. brought suit against Linda Walden alleging slander per se, damage to his personal reputation, damage to his business reputation, wounded feelings and embarrassment, punitive damages, and attorney fees for allegedly false statements Walden made before the city council of Temple, Georgia. Before the city council, Walden accused Shelton of criminal conduct toward Walden and others and accused Shelton of owing money to the City of Temple for outstanding bond forfeitures, which resulted in the revocation of Shelton's privilege to write bail bonds for the City of Temple. Shelton alleged that Walden's actions were the result of ill will and malice toward him resulting from West Georgia Development Company, a company that Shelton is a partner in, obtaining approval from the City of Temple for a development that Walden and her husband opposed.

Shelton's initial complaint was not verified as required by Georgia's Anti-Strategic Lawsuits Against Public Participation statute (codified at OCGA § 9-11-11.1 and referred to as the anti-SLAPP statute).[1] However, in compliance with the statute, Shelton filed an amended complaint, which included a verification, within ten days of

---

[1] For any claim asserted against a person or entity arising from an act by that person or entity which could reasonably be construed as an act in furtherance of the right of free speech or the right to petition government for a redress of grievances under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern, both the party asserting the

notification of such defect by Walden. Subsequent to filing a timely answer, Walden made a motion to dismiss Shelton's complaint, alleging that she was immune from suit under the anti-SLAPP statute for her statements to the city council and that Shelton's verification was insufficient to meet the requirements of the statute. Prior to the trial court's ruling, Shelton dismissed his complaint without prejudice on January 15, 2004.

On February 19, 2004, Walden filed a motion requesting attorney fees under OCGA §§ 9-11-11.1 (b) and (f) and 9-15-14. On March 24, 2004, without a hearing, the trial court entered an order denying Walden's motion for attorney fees, finding that Shelton had not proceeded in bad faith and that he had presented a justiciable issue of law and fact to the court. The trial court further found that Shelton's complaint required the trial court to make a determination of whether Walden's statements reasonably fell within the ambit of the anti-SLAPP statute and whether they could be reasonably construed as an act of petitioning the government for redress of grievances in connection with an issue of public interest or concern. The trial court found Shelton's claims "substantially justified" and that Walden's request for attorney fees under OCGA §§ 9-11-11.1 (b) and (f) and 9-15-14 was, therefore, "inapposite." Walden appeals from this order, and in her sole enumeration of error, alleges that because the record lacked credible justification for Shelton's complaint, the trial court abused its discretion by failing to assess sanctions under OCGA § 9-11-11.1.

Under OCGA § 9-11-11.1 (b), if the trial court finds that

> a claim is verified in violation of this Code section, the court, upon motion or upon its own initiative, shall impose upon the persons who signed the verification, a represented party, or both an appropriate sanction which may include dismissal of the claim and an order to pay to the other party or

---

claim and the party's attorney of record, if any, shall be required to file, contemporaneously with the pleading containing the claim, a written verification under oath as set forth in Code Section 9-10-113. Such written verification shall certify that the party and his or her attorney of record, if any, have read the claim; that to the best of their knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; that the act forming the basis for the claim is not a privileged communication under paragraph (4) of Code Section 51-5-7; and that the claim is not interposed for any improper purpose such as to suppress a person's or entity's right of free speech or right to petition government, or to harass, or to cause unnecessary delay or needless increase in the cost of litigation. If the claim is not verified as required by this subsection, it shall be stricken unless it is verified within ten days after the omission is called to the attention of the party asserting the claim. . . .
OCGA § 9-11-11.1 (b).

parties the amount of reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney's fee.

Walden contends that if a trial court finds that a claim was verified in violation of OCGA § 9-11-11.1, this provision mandates that the trial court award attorney fees.

We disagree that attorney fees must be imposed where the trial court determines a verification fails to satisfy the statute.

> In construing a statute, our goal is to determine its legislative purpose. In this regard, a court must first focus on the statute's text. In order to discern the meaning of the words of a statute, the reader must look at the context in which the statute was written, remembering at all times that the meaning of a sentence may be more than that of the separate words, as a melody is more than the notes. If the words of a statute, however, are plain and capable of having but one meaning, and do not produce any absurd, impractical, or contradictory results, then this Court is bound to follow the meaning of those words. If, on the other hand, the words of the statute are ambiguous, then this Court must construe the statute, keeping in mind the purpose of the statute and the old law, the evil, and the remedy.

(Punctuation and footnotes omitted.) *Busch v. State*, 271 Ga. 591, 592 (523 SE2d 21) (1999). See OCGA § 1-3-1 (a), (b). "This Court is to construe the statute to give sensible and intelligent effect to all of its provisions and to refrain from an interpretation which renders any part of the statute meaningless. [Cit.]" *State v. English*, 276 Ga. 343, 348 (3) (578 SE2d 413) (2003). "The Court must also, if possible, reconcile any potential conflicts in the statute, so as to make them consistent and harmonious. [Cit.]" Id. at 348-349.

Shelton voluntarily dismissed his suit without prejudice; thus the trial court could not rule on Walden's pending motion to dismiss because the trial court had lost jurisdiction.[2] The trial court was

---

[2] Walden did not move to set aside the voluntary dismissal. Therefore, the trial court lacked jurisdiction to rule on the motion to dismiss. Since the trial court did not rule on whether Shelton had a right to voluntarily dismiss his OCGA § 9-11-11.1 claim without prejudice or whether Shelton's complaint should have been dismissed for a verification that was not in compliance with the statute, such issues are not before us on appeal. See *Dial v. Adkins*, 265 Ga. App. 650, 652 (3) (595 SE2d 332) (2004) (issues not raised or ruled on in the trial court present nothing for appellate review). However, while this Court has consistently held that OCGA § 9-11-11.1 (b), which holds that "[i]f a claim is not verified as required by this subsection, it shall

without jurisdiction to act except under the limited jurisdiction provisions of OCGA § 9-11-11.1 (f) which provides that "[a]ttorney's fees and expenses under this Code section may be requested by motion at any time during the course of the action but not later than 45 days after final disposition, including but not limited to dismissal by the plaintiff, of the action." Therefore, the only sanction available to the trial court under OCGA § 9-11-11.1 (b), if it found the claim was verified in violation of this Code section, was the imposition of attorney fees and expenses.

While OCGA § 9-11-11.1 (b) states that the trial court *shall* impose an appropriate sanction, it further states such sanction *may* include dismissal of the claim and an order to pay expenses and attorney fees. To construe the statute as mandating the award of attorney fees upon a finding that the claim was verified in violation of the Code section, renders the words, "which *may* include," meaningless. It is clear from the language of the statute, that the legislative intent was to grant the trial court discretion, under the facts and circumstances of each case, in awarding attorney fees and expenses.

OCGA § 51-5-7 (4) provides that statements are privileged which are

---

be stricken unless it is verified within ten days after the omission is called to the attention of the party asserting the claim[,]" mandates dismissal if the party bringing the claim does not timely file the required verification or fails to timely amend a deficient verification, this Court has issued contradictory opinions as to whether such a dismissal is with or without prejudice. In *Browns Mill Dev. Co. v. Denton*, 247 Ga. App. 232, 236 (1) (c) (543 SE2d 65) (2000) (physical precedent to Division 1 (b), but cited for Division 1 (c)), a division of this Court held that a dismissal for failure to file a timely affidavit is without prejudice as such defect was a matter of abatement. This line of reasoning was continued in *Metzler v. Rowell*, 248 Ga. App. 596, 600 (3) (547 SE2d 311) (2001). See also *Land v. Boone*, 265 Ga. App. 551, 555 (b) (594 SE2d 741) (2004). *Metzler* was a seven-judge case in which the majority held that a motion to dismiss under OCGA § 9-11-11.1 for failure to file a timely verification should be treated like OCGA § 9-11-12 (b) (1) through (5) and (7) motions, which are matters of abatement. *Browns Mill Dev. Co.* and *Metzler* have never been overruled. See OCGA § 15-3-1 (d). Without addressing the Court's previous ruling in *Metzler* and finding the holding in *Browns Mill Dev. Co.* to be dicta and physical precedent only, which it was not, this Court, in *Hawks v. Hinely*, 252 Ga. App. 510, 515-516 (2) (556 SE2d 547) (2001), held that if a trial court found that the required verification was not timely filed, the statute mandated that the OCGA § 9-11-11.1 claim be dismissed with prejudice. However, Division 2 of *Hawks*, which made such ruling, was made moot by the holding in Division 1 of such opinion and, thus, was dicta. Relying upon the dicta in Division 2 of *Hawks*, this Court held in *Chatham Orthopaedic Surgery Center v. Ga. Alliance of Community Hosps.*, 262 Ga. App. 353, 356-358 (2) (585 SE2d 700) (2003), that a party was not entitled to voluntarily dismiss without prejudice and re-file an OCGA § 9-11-11.1 claim, if a sufficient verification in the original suit was not timely filed. Subsequent to the decisions in *Hawks* and *Chatham Orthopaedic Surgery Center*, this Court, relying on *Browns Mill Dev. Co.* and *Metzler* and recognizing that the above holding in *Hawks* was dicta, held in *Land v. Boone*, supra at 555 (b), that a dismissal for failure to file a timely verification on an OCGA § 9-11-11.1 claim was without prejudice. While such issue is not before us at this time, this conflict in the cases needs to be addressed either by this Court, when properly before it, or by the legislature.

made in *good faith* as part of an act in furtherance of the right of free speech or the right to petition government for a redress of grievances under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern, as defined in subsection (c) of Code Section 9-11-11.1.

(Emphasis supplied.) However, the privilege referred to in this Code section is not absolute, rather it is conditional or qualified, because the Code requires a showing of good faith and can be waived if the privilege is used merely as a cloak for venting private malice and not bona fide in promotion of the object for which the privilege is granted. See OCGA § 51-5-9.[3]

In this case, the statements Shelton complains of were made before the city council and were not entitled to absolute immunity under OCGA § 51-5-8 (absolute privilege of allegations in pleadings). While the absolute privilege of OCGA § 51-5-8 has not been limited to "pleadings" as they are defined under OCGA § 9-11-7 (a) and has been broadly construed to include "official court documents" and "acts of legal process,"[4] we must look to the nature of the proceeding and the character of the rights which may be affected by it when determining whether such absolute privilege applies to the proceeding. "This analysis includes but is not limited to the applicability of discovery,

---

[3] Under OCGA § 51-5-7, when a privilege depends upon the exercise of good faith, such privilege is a qualified privilege. See *JarAllah v. Schoen*, 243 Ga. App. 402, 405 (3) (531 SE2d 778) (2000) (the comments-of-counsel privilege (OCGA § 51-5-7 (7)) is conditional and must be made in good faith and is waived by actual malice); *Baskin v. Rogers*, 229 Ga. App. 250, 253 (4) (493 SE2d 728) (1997) (privilege under OCGA § 51-5-7 (2), (3) does not extend to reports which are not made in good faith and are not fair and honest); *King v. Masson*, 148 Ga. App. 229, 231 (1) (B) (251 SE2d 107) (1978) (privileged communications status of bona fide statements in performance of public duty (OCGA § 51-5-7 (1)) may be lost when official acts are done wilfully, corruptly, or maliciously); *Savannah News-Press v. Hartridge*, 110 Ga. App. 203, 209 (2) (138 SE2d 173) (1964) (as to privilege given to newspaper reports, if the privilege is used merely as a cloak for venting private malice and not bona fide in promotion of the object for which the privilege is granted, the privilege is waived); *Cook v. Atlanta Newspapers*, 98 Ga. App. 818 (107 SE2d 260) (1959) (the privileged communications status of reporting of judicial proceedings (OCGA § 51-5-7 (6)) is a conditional privilege); *Lamb v. Fedderwitz*, 68 Ga. App. 233, 234 (4) (22 SE2d 657) (1942), aff'd, *Fedderwitz v. Lamb*, 195 Ga. 691 (25 SE2d 414) (1943) (the privileges set forth in OCGA § 51-5-7 are conditional and if the privilege is used as a cloak for venting private malice and not bona fide in promotion of the object for which the privilege is granted, the privilege is waived).

[4] The absolute privilege of OCGA § 51-5-8
has been applied to protect, inter alia, allegations in affidavits, protective orders prepared by counsel, notices of lis pendens, an affidavit in support of an arrest warrant, the words of a judge in the course of a judicial proceeding, filings with the state employment agency, and other quasi-judicial proceedings in administrative tribunals.
(Footnote omitted.) *Skoglund v. Durham*, 233 Ga. App. 158, 159 (a) (502 SE2d 814) (1998) (physical precedent only).

the existence of provisions for an evidentiary hearing, whether the merits of the complaint are to be reached during the course of the proceeding, and the scope of judicial review thereon." (Citations omitted.) *Skoglund v. Durham*, 233 Ga. App. 158, 159 (a) (502 SE2d 814) (1998) (physical precedent only); *Davis v. Shavers*, 225 Ga. App. 497, 498 (1) (484 SE2d 243) (1997), aff'd, 269 Ga. 75 (495 SE2d 23) (1998). Under this analysis, Walden's statements to the city council would not fall within the absolute privilege of OCGA § 51-5-8 and would be subject only to the qualified or conditional privilege of OCGA § 51-5-7 (4). See *Sanders v. Brown*, 257 Ga. App. 566, 569 (a) (571 SE2d 532) (2002) (statement made before the Cobb County Board of Commissioners pursuant to a rezoning request was separate from the litigation over the land and not subject to the absolute privilege of OCGA § 51-5-8). When a "privilege is conditional[,] actual malice will bring about liability." *O'Neal v. Home Town Bank*, 237 Ga. App. 325, 332 (514 SE2d 669) (1999).

Here, Shelton and his attorney timely filed the required verification within ten days of being notified of the omission by Walden, which included a verification that the act was not a privileged communication under OCGA § 51-5-7 (4). In the complaint, Shelton alleged that Walden's statements were made in bad faith in that they were false and were in retaliation for Shelton's business obtaining permission from the City of Temple to develop certain real property, which development was opposed by Walden and her husband.

The trial court, in the exercise of discretion, was required to determine whether Walden's statements were absolutely privileged or entitled to the qualified privilege of OCGA § 51-5-7 (4) and further, to determine whether Shelton's suit fell under the anti-SLAPP statute. Even if the trial court ultimately decided that Shelton's suit was in fact a SLAPP suit and that the verification was in violation of the Code section, it is apparent, from the order denying attorney fees, that the trial court found that Shelton's suit fell into a grey area about which Shelton and his counsel could not have known prior to filing this suit. The trial court's ruling thereon, that Walden's statements, if made in good faith, could be entitled to the qualified privilege of OCGA § 51-5-7 (4) and the protections of the anti-SLAPP statute, was an act of discretion. Under such circumstances, the trial court's decision not to award attorney fees under OCGA § 9-11-11.1 (b) and (f) was not an abuse of discretion.

*Judgment affirmed. Ruffin, P. J., and Adams, J., concur.*

DECIDED OCTOBER 29, 2004 — 

*Gary P. Bunch*, for appellant.
*Thomas E. Maddox, Jr.*, for appellee.